UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Edward Mack, aka, Edward D Mack, | ) | C/A No.5:13-cv-01021-MGL-KDW |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| | ) | |
| Larry Cartledge, Warden, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |
| | ) | |

Petitioner Edward Mack is a state prisoner who filed this pro se Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  This matter is before the court pursuant to 28 U.S.C. § 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c) DSC, for a Report and Recommendation on Respondent's Amended Return and Amended Motion for Summary Judgment. ECF Nos. 34, 35.  On September 26, 2013, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Petitioner of the summary judgment procedures and the possible consequences if he failed to respond adequately to Respondent's motion. ECF No. 36.  On October 25, 2013, Petitioner filed a response in opposition to Respondent's Amended Motion for Summary Judgment, ECF No. 40, and a Supplement to his Response on November 19, 2013, ECF No. 42.  Having carefully considered the parties' submissions and the record in this case, the undersigned recommends that Respondent's Amended Motion for Summary Judgment, ECF No. 34, be granted.[1]

---

[1] Other pending motions are addressed within.

I.     Background

Petitioner is currently incarcerated in the Perry Correctional Institution of the South Carolina Department of Corrections ("SCDC").  In 1999, Petitioner was indicted in the April term of the Richland County Grand Jury for criminal conspiracy, murder, strong arm robbery, and kidnapping.  App. 1580-1587.[2]   On October 18 to October 25, 1999, a jury trial was held before the Honorable L. Henry McKellar, in Columbia South Carolina. App.  1-1450. Attorneys I.S. Leevy Johnson and Byron E. Gipson represented Petitioner and Deputy Solicitor Jonathan S. Gasser and Assistant Solicitor David M. Pascoe represented the State.  App. 1.  Petitioner was found guilty of criminal conspiracy, strong armed robbery, kidnapping, and murder.  App. 1435-1436.  Judge McKellar sentenced Petitioner to life on the murder conviction, 15 years on the strong armed robbery conviction to run consecutive to the sentence imposed for murder, and five years on the criminal conspiracy conviction, to run concurrent with the sentences imposed for murder and strong armed robbery.  App. 1450.

II.     Procedural History

Petitioner timely served a Notice of Appeal for his convictions.  Attorney I.S. Leevy Johnson and William T. Toal represented Petitioner on appeal.  ECF No. 30-9.  In the Final Brief, appellate counsel argued that: 1) the trial court improperly denied the pre-trial severance motion; 2) the trial court erred in allowing testimony about what the co-defendant told the police; 3) trial court erred in allowing evidence that defendant was in custody on other charges; 4) the use of a listening post who is under the supervision of the Solicitor is improper; and 5) the trial

---

[2] Citations to "App." and "Supp. App." refer to the Appendix for Petitioner's direct appeal of his judgment of conviction. That appendix is available at ECF Nos. 30-1, 30-2, 30-3, 30-4, 30-5, 30-6, 30-7, and 30-8 in this habeas matter.

court erred in allowing in opinion evidence of character. *Id.* at 4. The Final Brief of Respondent was filed on January 25, 2001. ECF No. 30-10. On December 11, 2001, the South Carolina Court of Appeals filed a Per Curiam unpublished opinion dismissing the appeal. Supp. App. 1-10. Petitioner filed a Petition for Rehearing, Supp. App. 11-12, which was denied on January 15, 2002. Supp. App. 14. Petitioner filed a Petition for Writ of Certiorari on February 11, 2002, Supp. 16-27, and the State filed a Return to the Petition for Writ of Certiorari on April 19, 2002, Supp. App. 29-51. On May 15, 2002, the South Carolina Supreme Court entered an order denying the Petition. Supp. App. 53. The Remittitur was issued on May 20, 2002. ECF No. 35 at 4. On May 8, 2003, Petitioner filed an Application for Post-Conviction Relief ("PCR") alleging ineffective assistance of trial counsel and ineffective assistance of appellate counsel. App. 1453-1457. On June 13, 2004, the State filed a Return denying Petitioner's allegations and requesting an evidentiary hearing. App. 1458-1462. On June 21, 2005, an evidentiary hearing was conducted before the Honorable Alison Renee Lee. App. 1467-1567. Petitioner was present and represented by Harry Devoe, Esq.; Assistant Attorney General Robert L. Brown represented the State. App. 1464. Petitioner, his trial attorneys, I.S. Leevy Johnson and Byron Gipson; Steven James; Frederick Mack; and Freddy Mack testified at the hearing. App. 1467-1567. In an Order dated March 28, 2008, the PCR court denied Petitioner's PCR Application in full, making the following findings of fact and conclusions of law:

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

This Court has had the opportunity to review the record in its entirety and has heard the testimony at the post-conviction relief hearing. This Court has further had the opportunity to observe the witnesses presented at the hearing, closely pass upon their credibility and weigh their testimony accordingly. Set forth below are the relevant findings of facts and conclusions of law as required pursuant to S.C. Code Ann. §17-27-80 (Rev. 2003).

By way of background, on the morning of September 6, 1997, the victim, Peggy Numberger, an assistant manager at Fatz Café was found murdered. She was bound and gagged with duct tape which completely covered her face suffocating her. Her body was found inside the locked restaurant between 8 and 8:30 am by employees. Eight thousand dollars, including proceeds from video poker machines, was taken. Applicant was a former manager who had left on bad terms several weeks before the robbery. He became a suspect along with others including an employee of the restaurant.

In an effort to obtain information regarding the case, an inmate named Tracy Abraham was placed in Applicant's cell. Abraham testified at trial about numerous conversations with Applicant, including Applicant's plan to collect Crime Stoppers reward money. Abraham also testified that he asked Mack to advance $2000 to Abraham's mother to help pay for an attorney, which Abraham would repay when he received his share of the reward money. Additionally, the State elicited testimony that Applicant's wife had received a phone call from Applicant requesting her to help get rid of some sneakers Applicant was allegedly wearing during the incident. Applicant was tried with his co-defendant, Eric Pinkney.

At the PCR hearing, the Applicant first presented testimony from trial counsel, I.S. Leevy Johnson. Mr. Johnson testified that his role was secondary to that of Byron Gipson. He handled cross-examination of witnesses and made the closing argument on behalf of Applicant. Mr. Johnson testified that he was adequately prepared; he met with Applicant on numerous occasions, and interviewed a number of witnesses. Mr. Johnson's firm invested a great deal of time and effort into Applicant's trial.

During pre-trial hearings, there were motions to exclude any statements made by applicant and to exclude the testimony of Abraham. It was clear that the trial judge would allow the testimony. Therefore, in anticipation of the admission of the testimony, the strategy was to undermine the effect by mentioning it during opening statement presented by Mr. Gipson.

Mr. Johnson testified that he specifically chose not to present the testimony of Applicant, Edward Mack, because it would have been damaging to the defense especially the cross-examination by the prosecutor. It was his trial strategy to reserve the decision to allow a defendant to testify until necessary in order to test the pulse of the jury.

The testimony of Applicant's wife, Patonya Mack, was very damaging because the solicitor was able to impeach her testimony at trial that Applicant did not leave the house until 7:45. In her statement given to police officers (which she disputes), Patonya says Applicant left the house at 7:00 am. Even though she was

4

a reluctant witness, the solicitor was able to obtain damaging information from her about conversations with Applicant after he was arrested and whether she attempted to destroy a pair of Nike shoes. According to Mr. Johnson, the fact that the shoes were burned gave the impression that the shoes were involved. The jury believed that Applicant ordered her to destroy the shoes because they had been worn during the crime.

Further Patonya's aunt, Bessie Mae Taylor, contradicted Patonya's testimony. The trial transcript reveals Taylor testified that Patonya came by after Applicant was arrested asking Taylor to watch the children. She brought bags of clothing with her. According to Taylor, Patonya had a pair of Nike sneakers which she began to cut up and burn.

Mr. Johnson testified that it was difficult to mount a defense against the State's evidence and the co-defendant's[1] testimony [statements] implicating Applicant. Mr. Johnson testified that he did not move to suppress co-defendant's testimony because of a judgment call in which he believed not objecting was in Applicant's best interest. Mr. Johnson believed it would be better to impeach the co-defendant based on his prior criminal activities and his history of being an informant. Mr. Johnson attempted to impeach the co-defendant by showing he was a paid informant. Mr. Johnson did not make a motion for severance; Mr. Gipson made the motion on behalf of Applicant.

Several key elements led to Applicant's conviction including the fact that Applicant was a former employee of the restaurant, inconsistent statements by Applicant, the co-defendant's testimony, and there were no witnesses helpful to the defense. Applicant had also claimed he did not know the co-defendant but evidence at trial contradicted that claim. Applicant claimed his timesheets from his employer would be helpful in contradicting the evidence presented by the State; however, Mr. Johnson testified that the defense team reviewed the Applicant's timesheets and they were not helpful. Mr. Johnson testified that to the extent the timesheet were helpful, he used them in his closing argument.

Mr. Johnson did not find anything objectionable in the solicitor's closing argument. The closing argument was well crafted and focused on the victim and how she died. It was "devastating" to Applicant's case. Mr. Johnson chose not to object to questionable issues in the closing argument based on trial strategy and the rhythm of the case. Mr. Johnson testified that trials have a rhythm and it is often necessary to gauge the rhythm when deciding to object or not object.

---

[1]It is unclear on whether Mr. Johnson is referring to the testimony of Tracy Abraham, the jail cell informant, who is not a co-defendant or statements made by the co-defendant, Eric Pinckney, to police. Mr. Abraham testified at trial, Mr. Pinckney did not.

The Applicant next presented testimony from trial counsel, Byron E. Gipson. This case was personal for Mr. Gipson because he knew the Mack family. The solicitor's office had an open file policy and allowed him to review the files. Mr. Gipson spent several hours going through the solicitor's file on this case. His office in Orangeburg was closed for ten days for him to prepare for this trial. He reviewed the timesheets in the solicitor's file regarding whether Applicant was working at Longhorn's on the night in question. Mr. Gipson testified that the timesheet was inconclusive and did not create a perfect alibi. He did not object at trial because he did not have a record for the employment to refute the testimony elicited by the State. Mr. Gipson testified that he did not have copies of the telephone records made by Abraham, the jail cell informant.

Mr. Gipson testified that Applicant's wife did not recall the time Applicant came home on the evening of the crime and would not been helpful on that issue. Mr. Gipson spoke to a number of witnesses identified by the Applicant, many of whom testified for the State. Mr. Gipson had no recollection of a party or wedding rehearsal as an alibi and would have investigated this matter had he been made aware of it. Mr. Gipson testified that he did not move to exclude the testimony of Bessie Mae Taylor because it was apparent that Judge McKellar was going to allow her testimony. Mr. Gipson testified that he spoke to the witness from McDonald's and subpoenaed her to testify but made a strategic decision to not present her.

Mr. Gipson testified that it was his strategy to expose information about the Applicant's jail time when Tracy Abraham was his cell mate as opposed to allowing the solicitor to do so. Mr. Gipson testified that he did not object to the solicitor's closing because Mr. Johnson was handling the defense closing and he yielded to Mr. Johnson's expertise.

Mr. Gipson concurred with Mr. Johnson's assessment that allowing Applicant to testify would have been against his interest. If Applicant had testified he would have exposed his criminal background and placed himself at odds with his wife's family by calling her a liar. Applicant was consulted and concurred with the decision not to testify. Mr. Gipson testified that he discussed Applicant's constitutional rights and Applicant understood his rights.

The co-defendant's attorney, John Delgado, focused on the computer next to the victim and the red Solo cup with $856.00 in it as well as there being red Solo cups at the Applicant's house. Mr. Gipson testified that there was evidence regarding a shoe print found on a stool which is how the shoes became important in the case.

During a trial there is a fine line between under-objecting and over-objecting, Mr. Gipson testified you have to know when to object and the record

does not show the emotions of jurors or body language of the jurors. Mr. Gipson testified that the judge's ruling on prior objections will dictate whether to make future objections on the same issue.

Next, the Applicant testified. At trial, he expected to testify and was influenced by his attorneys not to testify. He never discussed his testimony with his attorneys. He was advised by the trial judge regarding his right to testify. Applicant testified that he requested records such as oil change receipts and gas receipts to show his alibi. His father obtained the receipts later. He spent twenty-seven days in jail including five to six days in holding and had no contact with his wife. Applicant claims phone records, show his first phone call was made on the 15th but the solicitor said he called on the 9th to have his wife destroy evidence. Applicant testified that he was arrested on September 9 and the phone list does not reflect the solicitor's allegation. The trial transcript reflects that the custodian of the phone records at the detention center testified at trial.

Applicant testified that he worked from 3:02 pm until 11:42 pm at Longhorns and there was no record showing that Abraham called Applicant. His attorneys never spoke to the individuals he asked them to contact. Applicant testified there was not a $2000.00 money order. The trial transcript reveals that Mrs. Abraham testified she received a $2000.00 money order in the mail.

Applicant testified that he did not know Bessie Mae Taylor, but that she was not present for one month prior to the murder. Applicant testified that he left employment with Fatz Cafe on bad terms. The money in the red Solo cup was from his pay and extra money he had. According to the Applicant, the co-defendant Pinckney fabricated the story. Applicant testified that he went to a wedding rehearsal, rehearsal dinner, to his cousin's house and then home. Applicant testified the next morning, his wife woke him at 7:45 am. He went to his brother's (Fred Mack) house. He got there after 8 am. Applicant and his brother went to Chris Dash's house in northeast Columbia about 20 minutes away to pick him up to practice flag football. They then went to the practice field at Richland Northeast High School. When they left the practice field, they went to Eric Pinckney's house. Pinckney was not at home but his sister was there and he picked up Sega Genesis game controllers from her. They then went to Bi-Lo and Applicant's home. Applicant would have testified to the timeline at trial.

The Applicant's first cousin, Stephen James, testified that he is a case worker at the South Carolina Department of Social Services. Mr. James testified that on September 5, 1999 [sic], he was at a wedding rehearsal dinner and festivities. Mr. James testified that afterwards he went back to his house around 9:00 p.m. Mr. James testified that Applicant was there and they played video games. Mr. James testified that Applicant left at 12:30 a.m. at the earliest. Mr. James testified that he had never been questioned about the timeline for the

evening's events prior to the evidentiary hearing. Mr. James testified that he knew Applicant was in trouble but nobody ever contacted him about the case. He never attempted to contact anyone regarding the information he had.

Applicant's brother Fred Mack testified that he went with Applicant to his house on September 6, 1997 and left at 8:15-8:20 am. He stopped to fill his car with gasoline at the Hess gas station on North Main Street. Mr. Mack testified that he then went to Chris Dash's house then to Richland Northeast then to Fort Jackson at 9:00 a.m. Mr. Mack testified that he asked to testify but Hemphill Pride, his attorney advised him not to testify because he was a suspect.

The Applicant next presented testimony from Applicant's father, Freddie Mack. Mr. Mack testified that he is an elder at the church on Senate Street. His testimony centered on the distances between the various locations where Applicant went and the time it takes to travel to these locations. His testimony did not provide any assistance on the issues raised by Applicant. Testimony was elicited at trial about these distances from the police officers.

## CONCLUSIONS OF LAW

In a post-conviction relief action, the Applicant has the burden of proving the allegations in the application. Rule 71.l(e), SCRCP; Butler v. State, 286 S.C. 441, 334 S.E.2d 813 (1985). Where ineffective assistance of counsel is alleged as a ground for relief, the Applicant must prove that "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 692 (1984); Butler, 286 S.C. 441, 334 S.E.2d 813 (1985).

The proper measure of performance is whether the attorney provided representation within the range of competence required in criminal cases. Courts presume that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. Butler, 286 S.C. 441, 334 S.E.2d 813 (1985). The Applicant must overcome this presumption to receive relief. Cherry v. State, 300 S.C. 115, 386 S.E.2d 624 (1989).

Courts use a two-pronged test in evaluating allegations of ineffective assistance of counsel. First, the Applicant must prove that counsel's performance was deficient. Under this prong, attorney performance is measured by its "reasonableness under professional norms." Cherry, 300 S.C. at 117, 385 S.E.2d at 625, (citing Strickland), Second, counsel's deficient performance must have prejudiced the Applicant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Cherry, 300 S.C. at 117-18, 386 S.E.2d at 625.

As to the allegation that trial counsel failed to adequately prepare for trial of the action through necessary pre-trial investigation, this Court finds this claim is without merit. It is clear from the testimony that both attorneys invested a significant amount of time to this trial. Both attorneys testified that they interviewed several witnesses prior to trial and were able to determine what witnesses would be beneficial and which witnesses would be detrimental. Mr. Gipson testified that he reviewed the entire solicitor's file and closed his law practice for ten days prior to this trial to adequately prepare. He testified that the records were provided by the solicitor and were inconclusive to establish Applicant's alibi that he was at work. It does not appear that any stone was left unturned in the preparation of this case. Accordingly, this allegation is denied and dismissed.

As to the allegation that trial counsel failed to interview known pre-trial witnesses and failed to call these witnesses at trial, this Court finds this claim is without merit. As stated above, Mr. Gipson testified that he called eighteen potential witnesses and Mr. Johnson testified that he spoke to several more. Each attorney investigated witnesses that Applicant had indicated may be beneficial and the attorneys made a professional decision that their testimony would not be beneficial to the defense. Additionally, Mr. Gipson testified that he was unaware of a wedding party on the night in question and would have investigated this matter had Applicant made him aware. Further, Applicant only presented testimony from three individuals of which only two helped establish a timeline for the party that counsel was unaware of. This Court does not find that the testimony from these individuals are likely to change the decision of the jury and Applicant has failed to meet his burden of proof in establishing that counsel was in any way deficient in their pre-trial preparation. Accordingly, this allegation is denied and dismissed.

As to the allegation that trial counsel failed to make adequate contemporaneous exceptions to matters at trial, thus failing to preserve several issues for review on direct appeal, this Court finds this claim is without merit. The issue presented was the failure to make a contemporaneous objection to the statement which was the subject of the Jackson v. Denno hearing. This Court finds that even if counsel had objected contemporaneously, the admission of this statement would not have warranted a reversal and therefore Applicant can show no prejudice from counsel's failure to contemporaneously object. Additionally, counsel testified that once Judge McKellar decided to allow the testimony, counsel altered his strategy and focused on impeachment of the testimony rather than full suppression. Our courts are understandably wary of second guessing defense counsel's trial tactics. Where counsel articulates valid reasons for employing a certain strategy, counsel's choice of tactics will not be deemed ineffective assistance. Whitehead v. State, 308 S.C. 119, 417 S.E.2d 530 (1992).

9

See also Dempsey v. State, 363 S.C. 365, 610 S.E.2d 812 (2005) and McLaughlin v. State, 352 S.C. 476, 575 S.E.2d 841 (2003). Here counsel articulated a valid strategy and this Court will not second-guess that strategy regardless of the outcome. Accordingly, this issue is denied and dismissed.

As to the allegations that, (a) trial counsel failed to request beneficial jury instructions to which Applicant was entitled and (b) that trial counsel failed to object to burden shifting jury instructions that were subject to objection, this Court finds this claim is without merit. This Court first finds that Applicant failed to present any evidence regarding this issue and has thus waived the issue. Additionally, this Court finds that no additional jury instructions were warranted. South Carolina law dictates that jury instructions, when analyzed, must be considered in their entirety. See Todd v. State, 355 S.C. 396, 585 S.E.2d 305 (2003). A review of these jury instructions shows that they were proper and supported by the evidence. Accordingly, this allegation is denied and dismissed.

As to the allegation that appellate counsel failed to brief meritorious issues which were present which, had they been argued, would have justified reversal of Applicant's conviction, this Court finds this claim is without merit. A defendant is constitutionally entitled to effective assistance of appellate counsel. Evitts v. Lucey, 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985). "However, appellate counsel is not required to raise every non-frivolous issue that is presented by the record." Thrift v. State, 302 S.C. 535. 539, 397 S.E.2d 523 (1990). Appellate counsel has a professional duty to choose among potential issues according to their merit. Jones v. Barnes, 463 U.S. 745 (1983). Where the strategic decision to exclude certain issues on appeal is based on reasonable professional judgment, the failure to appeal all trial errors is not ineffective assistance of counsel. Griffin v. Aiken, 775 F.2d 1226 (4th Cir. 1985).

The Applicant must show that appellate counsel's performance was deficient and that he was prejudiced by the deficiency. Thrift, at 537; Gilchrist v. State, 364 S.C. 173, 612 S.E.2d 702 (2005); Anderson v. State, 354 S.C. 431, 581 S.E.2d 834 (2003). When a claim of ineffective assistance of counsel is based upon failure to raise viable issues, the court must examine the record to determine "whether appellate counsel failed to present significant and obvious issues on appeal." Gray v. Greer, 800 F.2d 644, 646 (7th Cir. 1986). Generally, the presumption of effective assistance of counsel will be overcome only when the alleged ignored issues are clearly stronger than those actually raised on appeal. Id. Here, Applicant has not shown that the issues not presented on appeal were more meritorious than those issues presented. Accordingly, this allegation is denied and dismissed.

As discussed above, the Applicant has failed to carry his burden in this action. Therefore, this Court finds that the application must be denied and dismissed.

### <u>CONCLUSION</u>

Based on all the foregoing, this Court finds and concludes that the Applicant has not established any constitutional violations or deprivations that would require this court to grant his application. Therefore, this application for post conviction relief must be denied and dismissed with prejudice.

App. 1570-1579.

Petitioner, represented by Elizabeth A. Franklin-Best of the South Carolina Commission on Indigent Defense, filed an initial Petition for Writ of Certiorari on September 23, 2008. ECF No. 30-11. The sole issue presented was whether "[t]he PCR judge err[ed] when she ruled that Mack received effective assistance of counsel when counsel did not object to the solicitor's devastating Golden Rule violation during closing argument, asking that the juror, while deliberating, to place their own hands over their noses and mouths, and to imagine the slow and horrible death by suffocation the victim experienced." *Id.* at 3. An Amended Petition for Writ of Certiorari presenting the same issue was filed on October 22, 2008. ECF No. 30-12. Thereafter, the State filed its Return to the Petition for Writ of Certiorari. ECF No. 30-13. On November 23, 2009, the South Carolina Supreme Court denied the Petition, ECF No. 30-14, and issued the remittitur on December 16, 2009, ECF No. 30-15.

Petitioner filed a Petition for a Writ of Habeas Corpus on March 25, 2010, *Edward Mack, # 261986 v. A.J. Padula*, 9:10-cv-00763-TLW-BM [ECF #1], which was withdrawn without prejudice on January 12, 2011, *Edward Mack, # 261986 v. A.J. Padula*, 9:10-cv-00763-TLW-BM [ECF #33].

Petitioner filed a Second PCR Application on December 8, 2010, alleging prosecutorial misconduct. ECF No. 30-16.  On May 12, 2011, the State filed a Return arguing that Petitioner's Application should be dismissed because it was successive to the prior PCR action and was filed after the statute of limitations had expired. ECF No. 30-17.  On July 1, 2011, the State Court entered a conditional order of dismissal of Petitioner's Second Application and granted Petitioner 30 days to provide specific reasons why his Second Application should not be dismissed.  ECF No. 30-18.  Petitioner responded on August 7, 2011.  ECF No. 30-19.  On June 20, 2012, the State Court entered a final order dismissing Petitioner's Second Application.  ECF No. 30-21. On July 5, 2012, Petitioner filed a Motion for Reconsideration on the court's order denying Petitioner's motion to alter or amend as untimely. ECF No. 30-23.  Petitioner filed a Notice of Appeal on July 17, 2012, ECF No. 30-25, which was dismissed on September 6, 2012, ECF No. 30-26.  The Remittitur was issued on October 1, 2012.  ECF No. 30-27.  Petitioner filed this habeas petition on April 16, 2013.  ECF No. 1.

III.    Discussion

A. Federal Habeas Issues

Petitioner raises the following issues in his federal Petition for a Writ of Habeas Corpus, quoted verbatim:

> GROUND ONE:   Trial Court's abuse of discretion in failing to grant severance. Petitioner suffered prejudice from the joinder, causing an unfair trial.
>
> Supporting facts:   --See Attached--
>
> GROUND TWO:  Recently discovered evidence proves Petitioner's innocence, revealed due process violations by prosecutorial misconduct and undermines the court's confidence in the conviction
>
> Supporting facts:    --See Attached--

GROUND THREE: Fraud upon the court established by recently discovered evidence vitiated the entire proceedings

Supporting facts:  --See Attached--

GROUND FOUR: Petitioner denied effective assistance of counsel.  Recently discovered evidence revealed external factors assistance in the denial.

ECF No. 1.

B.  Standard for Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted."

*Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

  C.  Habeas Corpus Statute of Limitations

  Because Petitioner filed his Petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claim is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir. 1998). The AEDPA provides that "[a] 1-year period of limitation shall apply to an application for writ of habeas corpus by a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2244(d)(1).  The statute further provides that "[t]he time during which a properly filed application for State post-conviction or collateral relief with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2).

  IV. Analysis

  A.  Petitioner's Application Is Time-Barred

  Respondent argues that Petitioner's habeas Petition should be dismissed because Petitioner's claims are untimely.  ECF No. 35 at 36. The AEDPA one-year period of limitation begins to run at the "conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). Because Petitioner sought review of his conviction with the

14

South Carolina Supreme Court, the AEDPA's one-year statute of limitations began running 90 days after the final ruling of the South Carolina Supreme Court, which is the time period for filing a Petition for Writ of Certiorari in the United States Supreme Court. *See Gonzalez v. Thaler*, 132 S. Ct. 641, 653-54 (2012) (holding that a judgment becomes final for purposes of § 2244(d)(1) "when the time for pursuing direct review in [the United States Supreme] Court, or in state court, expires").

      Review of the record indicates Petitioner's federal habeas Petition was not timely filed. As previously summarized, Petitioner timely appealed his convictions and sentences and his appeal was perfected with the filing of a Final Brief of Appellant and on December 11, 2001 his conviction was affirmed by the South Carolina Court of Appeals. ECF No. 30-9; Supp. App. 1-10.  Petitioner then timely filed a Petition for Writ of Certiorari on February 12, 2002, which was denied by South Carolina Supreme Court on May 15, 2002.  Supp. App. 16-27, 53.  Petitioner's conviction became final on August 13, 2002 when his time period for seeking review of his conviction with the United States Supreme Court expired. *See Gonzalez v. Thaler*, 132 S. Ct. at 653-54.  At this time the AEDPA statute of limitations began to run and was tolled with the filing of Petitioner's First PCR application on May 8, 2003, *see* 28 U.S.C. § 2244(d)(2); when Petitioner filed his PCR application, 268 days had elapsed leaving 97 days within which Petitioner could timely file a federal habeas petition. Petitioner's appeal of the denial of his First PCR Application was denied on November 23, 2009, and the Remittitur was issued on December 16, 2009. ECF Nos.  30-14, 30-15.  The AEDPA one-year statute-of-limitation time period began to run at this time and Petitioner had until March 23, 2010 to file his federal habeas petition.

15

On March 25, 2010, Petitioner filed his original habeas Petition. *Edward Mack, # 261986 v. A.J. Padula*, 9:10-cv-00763-TLW-BM [ECF #1].  However, the filing of this March 2010 Petition, which was withdrawn on January 12, 2011, *see Edward Mack, # 261986 v. A.J. Padula*, 9:10-cv-00763-TLW- BM [ECF #33], did not toll the AEDPA time period, and the AEDPA limitation period continued to run.  *See Duncan v. Walker*, 533 U.S. 167, 181-82 (2001) (finding that though the limitation period is tolled during the pendency of a state post-conviction relief proceeding under 28 U.S.C. § 2244(d)(2), it is not tolled during the pendency of a federal habeas petition).  Petitioner filed a Second PCR application on December 8, 2010.  ECF No. 30-16.  The filing of Petitioner's Second PCR application, over 260 days after the AEDPA statute of limitations expired, did not act to toll the statute of limitations because the limitations period had already expired when the application was filed.  *See Pace v. DiGuglielmo,* 544 U.S. 408, 417 (2005) ("Because the state court rejected Petitioner's PCRA Petition as untimely, it was not properly filed and he is not entitled to statutory tolling under § 2244(d)(2).").  Petitioner filed this Petition on April 16, 2013, 1120 days after the expiration of the AEDPA statute of limitations. Clearly, Petitioner's habeas Petition is untimely under 28 U.S.C. § 2244(d) and must be dismissed.

B.  The Statute of Limitations Should Not Be Equitably Tolled

The AEDPA's statute of limitations is subject to equitable tolling, which could, in effect, extend the final date for filing a habeas petition.  *Harris v. Hutchinson*, 209 F.3d 325 (4th Cir. 2000). The Fourth Circuit has underscored the very limited circumstances in which equitable tolling of the AEDPA's limitations period will be permitted, holding that a habeas petitioner "is only entitled to equitable tolling if he presents (1) extraordinary circumstances, (2) beyond his

16

control or external to his own conduct, (3) that prevented him from filing on time." *Rouse v.*
*Lee*, 339 F.3d 238, 246 (4th Cir. 2003) (en banc).  Thus, rarely will circumstances warrant
equitable tolling of the AEDPA limitations period:

> [A]ny invocation of equity to relieve the strict application of a statute of
> limitations must be guarded and infrequent, lest circumstances of individualized
> hardship supplant the rules of clearly drafted statutes. To apply equity generously
> would loose the rule of law to whims about the adequacy of excuses, divergent
> responses to claims of hardship, and subjective notions of fair accommodation.
> We believe, therefore, that any resort to equity must be reserved for those rare
> instances where—due to circumstances external to the party's own conduct—it
> would be unconscionable to enforce the limitation period against the party and
> gross injustice would result.

*Harris*, 209 F.3d at 330. The respondent bears the burden of asserting the AEDPA's statute of
limitations, *Hill v. Braxton*, 277 F.3d 701, 705 (4th Cir. 2002); the petitioner then bears the
burden of establishing that his petition is timely or that he is entitled to the benefit of the
equitable-tolling doctrine, *Rouse*, 339 F.3d at 246.

In 2010, the United States Supreme Court considered the issue and also held that § 2254
"is subject to equitable tolling in appropriate cases." *Holland v. Florida*, 130 S. Ct. 2549, 2560
(2010); *cf. Pace v. DiGuglielmo*, 544 U.S. 408, 418 n.8 (2005) (noting Court assumed without
deciding that AEDPA's statute of limitations could be equitably tolled for purposes of that
decision because respondent assumed it did). The *Holland* Court reiterated its prior holding in
*Pace* that the statute would be equitably tolled "only if [the petitioner] shows '(1) that he has
been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his
way' and prevented timely filing." *Holland*, 130 S. Ct. at 2562 (quoting *Pace*, 544 U.S. at 418)).

In his response to Respondent's summary judgment motion, Petitioner contends that the
AEDPA does not bar his Petition and argues that his Petition is governed by 28 USC §

2244(d)(1)(B)'s statute of limitations. ECF No. 42 at 3. Petitioner contends that under §

2244(d)(1)(B) the period of limitation commenced on "the date on which the impediment to

filing an application created by State action in violation of the Constitution . . . [was] removed, if

the applicant was prevented from filing by such state action." *Id*. at 4. Petitioner argues that the

State prosecutor in his case deliberately failed to meet its "<u>Brady</u> obligation by not disclosing all

material and favorable evidence which is an impediment that currently exists because other

material and favorable evidence exist which should have been disclosed and is now needed for

full development" of the grounds in his habeas Petition. *Id*. at 4. Petitioner argues that

"[b]ecause the limitation period has not been triggered and [he] has filed despite the impediment

this petition is not barred by the statute of limitations." *Id.* Petitioner contends that the State

impeded his ability to file by failing to provide all discovery in his action and it was not until he

discovered this previously undisclosed information on June 26, 2010, August 25, 2010,

September 10, 2010, and August 23, 2012, *Id.* at 3-4, that the impediment to his filing was

removed. *Id.* at 3-4. Petitioner contends that he had a federal habeas petition pending at the time

he discovered this new evidence, which he subsequently dismissed, so that he could "provide the

state court a fair opportunity to address and resolve the newly discovered claims." *Id.* at 5.

Petitioner contends that this PCR application was erroneously dismissed as untimely. *Id*. at 6.

Petitioner further argues that the AEDPA does not apply to his case because it is a non-capital

case, and therefore his Petition should not be dismissed. *Id.* at 6-7.

28 USC § 2244(d)(1)(B) provides the one-year limitation period for filing a federal

habeas petition begins to run when an impediment created by State action which violates the

Constitution or laws of the United States is removed, if the State action prevented the Petitioner

from filing the petition. To warrant delayed accrual under § 2244(d)(1)(B), Petitioner must show that: "(1) he was prevented from filing a petition (2) by State action (3) in violation of the Constitution or federal law." *Egerton v. Cockrell*, 334 F.3d 433, 436 (5th Cir. 2003). Although § 2244(d) does not define what constitutes an "impediment," the plain language of the statute makes clear that whatever constitutes an impediment must prevent a prisoner from filing his petition. *Lloyd v. Van Natta*, 296 F.3d 630, 633 (7th Cir. 2002).

The undersigned finds that § 2244(d)(1)(B) does not apply under the circumstances of this case. Petitioner's argument rests on the fact that the Solicitor's alleged *Brady* violation constituted unlawful state action that impeded his ability to file a habeas petition.[3] With respect to the alleged *Brady* violations, Petitioner cites to his habeas Petition and states that the prosecution concealed material information and "withheld exculpatory physical evidence which eliminates Petitioner from the crime," knowingly  presented perjured testimony, "suppressed favorable information" that could have been used to impeach witnesses, and withheld evidence "which challenges witness qualification."  ECF No. 1-1 at 2.   Petitioner further argues that the "[p]rosecution's deliberate suppressions of exculpatory evidence and material evidence deprived Petitioner's rights to effective assistance of trial and appellate counsel denying Petitioner the ability to present complete defense and to raise all meritorious issues."  ECF No. 1-1 at 5. Petitioner's "newly discovered evidence" consists of:

- June 23, 2010 Freedom of Information Act ("FOIA") Request- South Carolina Law Enforcement Division ("SLED")
  - Forensic evidence

---

[3] *Brady* established that due process requires a prosecutor to disclose material exculpatory evidence to the defendant before trial. *Brady v. Maryland*, 373 U.S. 83 (1963).

- ▪ SLED Trace Department:  Initial Hair Exam Worksheet

- ▪ Trace Evidence Inventory Worksheet

- ▪ SLED Forensic Services Laboratory Report

  - o Notes and Summary of events day victim was killed.

- April 29, 2010 Investigative Report

  - o Criminal Background for Bessie Mae Taylor

- August 3, 2010 FOIA Request- United States Post Office

  - o Information about United States Postal Service Domestic Money Orders

- July 27, 2012 FOIA Request- City of Columbia

  - o Bell South Search Warrants

  - o Bell South Subpoenas

  - o Bell South Phone Records for FATZ café

  - o Bell South Phone Records for Pinckney, A

  - o Bell South Phone Records for Frederick Mack

  - o Bell South Phone Records for L. Dash

  - o Bell South Phone Records for Patonya Mack

  - o Bell South Phone Records for "Ringmaster Number, Process by Hand"

  - o Bell South Phone Records for James and Cathy Mack

  - o Bell South Phone Records for Edna M. Daniels

  - o Ten Point Letter, in re Tracy Lynn Abraham

  - o Writ of Habeas Corpus Ad Testificandum for Tracy Lynn Abraham

  - o Booking Report for Tracey [sic] Abraham

      ○  Transcript of hearing (2/18/98) excerpt

      ○  Case Summary:  Notes from Phone call from inmate  David D. Darby who provided information on FATZ murder and named Curby Fogle as a suspect.

      ○  Investigative Summary of investigation of Petitioner

      ○  Notes on transportation of Bessie May Taylor to Richland County Courthouse.

      ○  Richland County Fifth Judicial Circuit, Public Index Search, Mack v. State of SC.

ECF No. 42-1.  In reviewing the alleged "newly discovered evidence," the undersigned finds that Petitioner has not presented sufficient evidence to establish that this evidence was not made available to his defense counsel. Petitioner's trial counsel, Byron Gipson, testified at the PCR hearing that the Solicitor's Office had an open file policy and he "spent several hours going through their information with them.  They had records, jail records, of phone calls that were made and different information that they subpoenaed.  So I reviewed all of those matters in preparation for the case."  App. 1492.  Attorney Gipson further testified that he "reviewed all of the records from the Solicitor's Office. . . . I reviewed all of the records that had been subpoenaed.  They had records for phone calls, employment records, all of those things, reviewed all of those matters."  App. 1493.  Because Petitioner has not offered any evidence from Attorney Gipson that this alleged "newly discovered evidence" that he obtained in response to his FOIA requests was not contained in the Solicitor's files that Attorney Gipson reviewed, the undersigned finds that Petitioner has failed to establish that illegal conduct by the State or those

acting for the State "made it impossible for him to file a timely § 2254 petition in federal court." *See Ramirez v. Yates*, 571 F.3d 993, 1000-01 (9th Cir. 2009). Therefore, Petitioner is not entitled to delayed accrual under § 2244(d)(1)(B).

To the extent Petitioner contends that his Petition is timely because he is actually innocent of the crimes for which he was convicted, the undersigned finds that this argument is without merit. Claims of actual innocence are often used to attempt to satisfy the "miscarriage of justice" exception to a procedural default. *See Schlup v. Delo*, 513 U.S. 298, 315 (1995). Even if the undersigned were to assume that an "actual innocence" exception exists for a habeas claim barred by the statute of limitations, Petitioner has failed to meet its extremely high threshold standard. A petitioner claiming actual innocence "must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *House v. Bell*, 547 U.S. 518, 536-37 (2006) (quoting *Schlup*, 513 U.S. at 327). This "standard is demanding and permits review only in the 'extraordinary' case." *Id.* at 538 (quoting *Schlup*, 513 U.S. at 327 (internal quotations and citations omitted)). Also, Petitioner would have to show "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). The undersigned has reviewed Petitioner's arguments and finds that Petitioner has not offered any new evidence to support an "actual innocence" claim. Instead, Petitioner's arguments address evidence that existed at the time of his conviction that goes to legal insufficiency, not factual innocence. Accordingly, it is recommended that the Respondent's Amended Motion for Summary Judgment be granted. [4]

---

[4] Because the undersigned finds that the statute of limitations bars Petitioner's § 2254 petition, it is precluded from addressing the merits of his claims. *See Kornahrens v. Evatt*, 66 F.3d 1350

V.    Conclusion and Recommendation

Therefore, based upon the foregoing, the undersigned recommends that Respondent's Amended Motion for Summary Judgment, ECF No. 34, be GRANTED and the Petition be DENIED.   If the court accepts this recommendation, Petitioner's Motion for Issuance of Subpoena, ECF No. 46, will be moot.

IT IS SO RECOMMENDED.

March 13, 2014                                    Kaymani D. West
Florence, South Carolina                         United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

---

(4th Cir. 1995) (finding that once a claim is determined to be procedurally barred, the court should not consider the issue on its merits).